UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WATSONVILLE,<br><br>Defendant. | Case No. 16-cv-03987 NC<br><br>**ORDER GRANTING GTE'S MOTION FOR SUMMARY JUDGMENT ON THE FOURTH CLAIM FOR RELIEF**<br><br>Re: Dkt. No. 36 |

This case arises from defendant City of Watsonville's denial of plaintiff GTE's application to place a wireless communications facility on a parcel within the City. GTE complains of violations of the Telecommunications Act of 1996 and its implementing rulings. Because the Court finds the City violated 47 U.S.C. § 332(c)(7)(B)(i)(II), and the City's arguments regarding the applicability of the California Environmental Quality Act (CEQA) lacking in merit, the Court GRANTS partial summary judgment in favor of GTE on its fourth claim for relief, and ENJOINS the City to approve GTE's application for the proposed wireless communications facility.

**I.  BACKGROUND**

**A.  Stipulated Facts**

The parties stipulated to a set of facts. Dkt. No. 30. As relevant to this motion for summary judgment, those facts provide that GTE applied with the City to approve a

Case No. 16-cv-03987 NC

special use permit with design review for a wireless communications facility on September 14, 2014. *Id.* at 2. The application sought to place the facility on a property located in the City's general industrial zone, which allows such facilities. *Id.* After an initial denial and appeal of its application, GTE prepared additional evidence to support its application.[1] *Id.* GTE "submitted additional evidence in support of the Application, including a statement with supporting technical data from its Radio-Frequency . . . Engineer and an analysis of 19 alternative locations." *Id.* at 3. The City hired Global RF Solutions to review this evidence. *Id.* Global RF confirmed, among other things, that the facility was needed and that GTE evaluated alternative locations. *Id.*

The parties further stipulated that:

> 11. Based on the evidence submitted by Verizon Wireless, as reviewed by Global RF Solutions . . . , Verizon Wireless has demonstrated that a significant gap in Verizon Wireless coverage exists in Watsonville (the "Significant Gap"). . . .
>
> 12. Verizon Wireless's Application contained an alternatives analysis that established a prima facie case that the Facility constituted the least intrusive means to fill the Significant Gap. . . . Verizon investigated alternatives for more than one year. The City's expert, Global RF Solutions, agreed with Verizon Wireless RF engineers that the Facility was the least intrusive means and that the 19 potential alternatives analyzed in the Application were either technically infeasible or not potentially available. There is no evidence that any alternative discussed in the record is potentially available and technically feasible.

*Id.* at 3-4.

### B. Procedural History

GTE filed the complaint in this case on July 14, 2016. Dkt. No. 1. The Court granted partial summary judgment in GTE's favor on its alleged Shot Clock Ruling violation. Dkt. No. 13, 25. GTE subsequently filed a second and third motion for summary judgment. Dkt. Nos. 29, 36. The third motion seeks summary judgment on the fourth claim for relief for violation of 47 U.S.C. § 332(c)(7(B)(i)(II). Dkt. No. 36. At the

---

[1] In the Stipulated Facts, the parties refer to GTE as "Verizon Wireless." Dkt. No. 30. Though the Court notes that GTE is doing business as "Verizon Wireless," the named plaintiff in this case is "GTE Mobilnet of California Limited Partnership." As a result, the Court will continue to refer to the plaintiff in this case as "GTE."

Case No. 16-cv-03987 NC        2

1  December 14, 2016, case management conference, the parties orally agreed that the Court
2  should first decide the third motion for summary judgment, which, according to the parties,
3  would likely resolve the case. *See* Dkt. No. 40. Both parties consented to the jurisdiction
4  of a magistrate judge. Dkt. Nos. 8, 11.

## II.   LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## III.   DISCUSSION

The current motion is limited to the fourth claim for relief, which addresses whether the City violated 47 U.S.C. § 332(c)(7)(B)(i)(II) by denying GTE's application. GTE seeks an injunction, ordering the City to approve its application for the wireless facility. The City denies any violation, and further argues GTE failed to examine alternatives as

Case No. 16-cv-03987 NC                 3

required by CEQA.

**A.   The City's Denial Under the Federal Telecommunications Act Was Invalid.**

As part of the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(i)(II) provides limitations on a state or local government's zoning authority as to the "regulation of the placement, construction, and modification of personal wireless service facilities," and provides that such locality "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." The Act requires a local government's zoning decision, such as a denial of a request to place a personal wireless service facility, be supported by substantial evidence under state and local law. *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 992-93 (9th Cir. 2009). A locality violates § 332(c)(7)(B)(i)(II) "if it prevent[s] a wireless provider from closing a 'significant gap' in service coverage." *Id*. at 995 (citation omitted). Such a claim requires "(1) the showing of a 'significant gap' in service coverage and (2) some inquiry into the feasibility of alternative facilities or site locations." *Id*. (internal quotation marks and citation omitted).

The significant gap prong is satisfied where "a provider is prevented from filling a significant gap in its *own* service coverage." *MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715, 733 (9th Cir. 2005) *abrogated on other grounds by T-Mobile S., LLC v. City of Roswell, Ga*., 135 S. Ct. 808 (2015). The feasibility prong is evaluated under a "least intrusive means" standard, requiring "the provider show that the manner in which it proposes to fill the significant gap in services is the *least intrusive on the values that the denial sought to serve*." *City of Anacortes*, 572 F.3d at 995 (internal quotation marks and citation omitted). A provider may make a prima facie showing of an effective prohibition "by submitting a comprehensive application, which includes consideration of alternatives, showing that the proposed [facility] is the least intrusive means of filling a significant gap." *Id*. at 997-98. Though a "locality is not compelled to accept the provider's representations," "when a locality rejects a prima facie showing, it must show that there are some potentially available and technologically feasible alternatives." *Id*. at 998.

Case No. 16-cv-03987 NC            4

The City concedes GTE "identified a significant gap, established a *prima facie* case for the least intrusive means." Dkt. No. 41 at 8. Yet it argues that because GTE "failed to investigate all other possible alternatives when the City and community found the alternatives in the Application inappropriate," granting summary judgment is inappropriate. *Id*. The City misunderstands the rule in *City of Anacortes*, and it misinterprets the application of *Am. Tower Corp. v. City of San Diego* to its case. 763 F.3d 1035, 1056-57 (9th Cir. 2014) (finding no effective prohibition where a *prima facie* case for least intrusive means was *not* made by the applicant). The rule is that once the provider presents a prima facie case that the facility is the least intrusive means to fill a significant gap in service, if the locality rejects that showing, *the locality* "must show that there are some potentially available and technologically feasible alternatives." *City of Anacortes*, 572 F.3d at 998. The City made no such showing here, and there is no rule that a provider must "investigate all other possible alternatives." Dkt. No. 41 at 8. A post hoc rationalization in the July 15, 2016, decision letter does not suffice where it includes reasons not cited by the Councilmembers at the June 14, 2016, meeting or in the meeting's minutes. Dkt. No. 27 at 419-21, 426-30. The City's presenting of sites not fully considered by GTE and its arguments regarding CEQA were only fully provided *after* litigation commenced. *Id*. at. 426-30. At that point, the City had failed to meet its burden to rebut GTE's argument that there were not "technologically feasible alternatives." *City of Anacortes*, 572 F.3d at 998.

### B. An Evaluation Under CEQA Was Not Required.

The City argues that the alternative locations considered by GTE were "not properly vetted as required under CEQA," and that as a result, the City could not determine whether the proposed location was the "least intrusive means" to attain GTE's goals. Dkt. No. 41 at 10. GTE argues the City's CEQA argument is a "*post hoc* rationalization," and that no evidence supported such alternatives needed to be vetted. *Id*.

The Court agrees with GTE that the City's concerns expressed in the July 15, 2016, letter are post hoc rationalizations. Dkt. No. 27 at 428-30. At the June 14, 2016, hearing,

Case No. 16-cv-03987 NC          5

none of the council members relied on CEQA as a reason for supporting the appeal of the Planning Commission's decision. *Id*. at 401-06. Indeed, as GTE pointed out, the only council member who even mentioned CEQA disavowed any concerns regarding CEQA compliance. *Id*. at 404 (Mayor Hernandez stating he did not think CEQA needed to be "enacted in this procedure"). The meeting minutes similarly did not cite CEQA as a reason for the granting of the appeal. *Id*. at 419-21. As GTE points out "[w]hile project opponents repeatedly claimed that the application raised various CEQA issues, the City never endorsed this view (or purported to) until its formal written denial issued the day after Verizon Wireless filed this action." Dkt. No. 42 at 4.

Even if the Court were to consider the City's CEQA argument on the merits, GTE and the Planning Committee showed GTE qualified for a categorical exemption under § 15332 as an infill project.[2] *See id*. at 473-75, 480. In addition, the Court rejects the City's argument that City staff and the Planning Commission incorrectly found "the project exempt from CEQA because substantial evidence shows unusual circumstances exists and a fair argument could be made that such circumstances might cause a significant impact on the environment." Dkt. No. 41 at 10. First, the City's reference to "significant environmental impacts" is vague and nearly unintelligible in the decision letter, and its grounds for finding such an impact *in the letter* are never again discussed in their opposition to this motion. Dkt. No. 27 at 429. Second, the City's opposition to this motion is the first time the City itself raised concerns regarding the well-being of eagles and migratory birds. *Compare* Dkt. No. 41 at 11 *with* Dkt. No. 27 at 429. Third, and as already pointed out above, none of the council members expressed CEQA-related concerns

---

[2] In its July 15, 2016, decision letter, the City stated that the infill exemption did not apply because "[t]his site is in close proximity to protected wetlands and habitats for endangered species. Therefore the parcel is not 'substantially surrounded by urban uses.'" Dkt. No. 27 at 429. The City cites no authority for that bald statement, which is notable because the City Community Development Department's memorandum in preparation for the June 14, 2016, hearing, which provided: "The project site . . . is located adjacent to an existing heavy commercial use. The site is surrounded by a wrecking yard, small farming activities, and residential uses." *Id*. at 473 (June 9, 2016, memorandum by Suzi Merriam, Assistant Community Development Director). Ms. Merriam also testified that the proposed location did not "abut" the slough in question. *Id*. at 367.

Case No. 16-cv-03987 NC                6

1    when they voted at the June 14, 2016, hearing. To consider such arguments on the merits
2    would constitute unfair surprise to GTE. Thus, the Court finds the City's CEQA-related
3    arguments are untimely post hoc rationalizations.

### C.   Injunctive Relief Is Appropriate.

GTE requests the Court to grant injunctive relief ordering the City to issue the facility permit. Dkt. No. 36 at 10. The City asks that if the Court finds it effectively prohibited GTE's services, that the Court make the order for injunctive relief "contingent upon the completion of a full and proper environmental review as required under CEQA." Dkt. No. 41 at 12. The City cites no authority supporting its request for such a conditional grant of relief.

47 U.S.C. § 332(c)(7)(B)(v) provides that where there has been an effective prohibition of service by a locality, a "court shall hear and decide [an action filed by the provider] on an expedited basis." The statute does not specify a remedy. However, where "a public agency fails to comply with Section 332(c)(7) of the Telecommunications Act, the 'appropriate remedy is injunctive relief in the form of an order to issue the relevant permits' because 'injunctive relief best serves the [Act's] stated goal of expediting resolution of this type of action.'" *T-Mobile W. Corp. v. City of Huntington Beach*, No. 10-cv-2835 CAS EX, 2012 WL 4867775, at *19 (C.D. Cal. Oct. 10, 2012) (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir.1999)).

Though the Ninth Circuit has not explicitly held injunctive relief is the appropriate remedy for violations of 47 U.S.C. § 332(c)(7)(B) violations, many courts have found that injunctive or some other type of equitable relief is appropriate for such violations. *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1221-22, n.12 (11th Cir. 2002) (citing cases). Furthermore, in *City of Anacortes*, the Ninth Circuit found the district court properly enjoined the City's denial of an application where the City effectively prohibited service. 572 F.3d at 998; *see also City of Huntington Beach,* 2012 WL 4867775, at *20 (finding the proper remedy was an injunction granting permits) *and T-Mobile W. Corp. v. City of Agoura Hills*, No. 09-cv-9077 DSF PJWX, 2010 WL 5313398, at *15 (C.D. Cal.

Case No. 16-cv-03987 NC            7

Dec. 20, 2010) (same).

Thus, based on the weight of the authority, the Court finds injunctive relief in favor of GTE appropriate.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS GTE's motion for summary judgment on the fourth claim for relief, and ENJOINS the City to approve GTE's application for the proposed wireless communications facility.

**IT IS SO ORDERED.**

Dated:  February 7, 2017     _____
                              NATHANAEL M. COUSINS
                              United States Magistrate Judge